UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN THEBERGE and ANTOINETTE SUCHENKO,<br><br>Plaintiffs,<br>vs.<br><br>ALLIANCE ENTERTAINMENT, LLC,<br><br>Defendant. | No. 2:18-cv-01472-AJS<br><br>LEAD CASE |
| TOM BROWN and LISA GATHERS,<br><br>Plaintiffs,<br>vs.<br><br>THE TEACHING COMPANY SALES, LLC,<br><br>Defendant. | No. 2:18-cv-01512-AJS<br><br>MEMBER CASE |

## CONSENT DECREE

1. This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 11, by and between the following parties: Plaintiffs, Tom Brown and Lisa Gathers ("Plaintiffs") and Defendant, The Teaching Company Sales, LLC ("TC LLC" or "Defendant") (Plaintiffs and TC LLC shall hereinafter be collectively referred to as, the "Parties") for the purposes and on the terms specified herein.

## RECITALS

2. Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189 ("ADA") and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private

1

entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). The Pennsylvania Human Relations Act and the Massachusetts Public Accommodations Law contain comparable provisions prohibiting discrimination on the basis of disability in places of public accommodation. The claim for violation of Massachusetts General Laws 93A is premised on the alleged violation of the ADA and Massachusetts Public Accommodation Law.

3. On November 12, 2018, Plaintiffs filed this lawsuit against TC LLC. The Plaintiffs alleged that TC LLC's websites, including www.thegreatcourses.com and www.thegreatcoursesplus.com (the "Websites"), contain barriers that prevent full and equal use by blind persons, in violation of Title III of the ADA, 42 USC §§12181–12189, the Pennsylvania Human Relations Act, the Massachusetts Public Accommodations Law, and Massachusetts General Laws Chapter 93A. *See Gathers et al. v. The Teaching Company Sales, LLC*, Member Case No. 2:18-cv-01512-AJS).

4. Defendant expressly denies that it and the Websites violate Title III of the ADA, the Pennsylvania Human Relations Act, the Massachusetts Public Accommodations Law, Massachusetts General Laws Chapter 93A or any other comparable regulation or statute. By entry into this Consent Decree, Defendant does not admit any wrongdoing.

5. This Consent Decree resolves, settles, and compromises all issues between the Parties based on the allegations set forth in Plaintiffs' Complaint [Member Case No. 2:18-cv-01512-AJS, ECF No. 1].

6. This Consent Decree is entered into by the Plaintiffs, individually.

## JURISDICTION

7. Plaintiffs allege that Defendant is a private entity that owns and/or operates the Websites which are available through the internet to personal computers, laptops, mobile devices, tablets, and other similar technology. Plaintiffs contend that Defendant's Websites are sales and service establishments whose operations affect commerce and a public accommodation subject to Title III of the ADA, the Pennsylvania Human Relations Act, and the Massachusetts Public Accommodations Law. 42 U.S.C §12181(7); 12182(a); 28 C.F.R. §§ 36.104, 36.201(a). Defendant denies that its Websites are a public accommodation or a place of public accommodation or are otherwise subject to Title III of the ADA and the state statutes identified in the Complaint.

8. Plaintiffs are suing on their own behalf, as aggrieved persons pursuant to, among other things, 42 U.SC. § 12188(b)(2)(b).

9. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12188. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Parties agree that venue is appropriate.

## AGREED RESOLUTION

10. Plaintiffs and Defendant agree that it is in the Parties' best interest to resolve this lawsuit on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in Plaintiffs' Complaint.

In resolution of this action, the Parties hereby **AGREE** to the following:

### DEFINITIONS

11. Effective Date means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

3

12. Visual Impairment means any physical, mental, or sensory impairment that substantially limits a person in the major life activity of seeing.

13. Reasonable Efforts means, with respect to a given goal or obligation, the efforts that a reasonable person or entity in TC LLC's position would use to achieve that goal or obligation. Any disagreement by the Parties as to whether TC LLC has used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in Paragraphs 23 through 32 of this Consent Decree. Reasonable Efforts shall be interpreted so as to not require TC LLC to undertake efforts whose cost, difficulty or impact on TC LLC's operations could constitute an undue burden, as defined in Title III of the ADA but as applied solely to TC LLC's website-related operations as though they are collectively a stand-alone business entity, or which could result in a fundamental alteration in the manner in which TC LLC operates its respective website-related properties or the primary functions related thereto, which could result in a loss of revenue or traffic on its respective website-related operations.

14. The term "Average Screen Reader User" is intended to refer to the general body of persons with Vision Impairments who use screen readers for effective communication with the Internet and various websites. The term is not intended to narrowly identify someone with a particular level of competency but instead is intended to be inclusive, while ruling out "outliers" in terms of screen reading software use proficiency. Therefore, the term Average Screen Reader User is intended to exclude a person who has just recently started using a screen reader and has very little experience and competence using it and at the other extreme to also exclude a blind, tech savvy person with substantial experience using a screen reader while including most users in between.

**TERM**

4

15. The term of this Consent Decree shall commence as of the Effective Date and remain in effect for the earlier of: (1) thirty-six (36) months from the Effective Date; or (b) the effective date, if any, that regulations are adopted by the Department of Justice for websites under Title III of the ADA.

## COMPLIANCE WITH TITLE III OF THE ADA

16. **Web Accessibility Modifications:** By December 31, 2019, the Defendant shall utilize components of the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA") and other methods to perform the below-listed modifications (the "Modifications") in the manner set forth in this Agreement. Defendant shall not be responsible for ensuring that third party content or plug-ins that are not owned by Defendant, but are otherwise located on the Websites or linked to from the Websites, conform to WCAG 2.0 AA or are otherwise accessible.

    a.    The Websites' Main Page

        i.    Ensure that a "skip to main" link is defined at the top of the pages and is properly anchored to the main page content for better navigation.

        ii.    Ensure ARIA role attributes are used in the region elements such as: <header role=" banner">,, <main role="main"> and <footer role="contentinfo"> for better page content organization and screen reader compatibility.

        iii.    Change "Main Menu" heading to heading level 1.

        iv.    Code the "Courses" and "About Us" links as native links.

5

        v.        Label the two "Void (O)" links as "What are priority codes" and the state of the links will be designated as expanded when the link is active.

        vi.        Change the "Next" and "Previous" links to level 3 headings.

        vii.        Label the "Homepage hero/sets promo small" link as "Course Sets."

b.    Creating an Account Page

        i.        Code the "Sign In" link as native for mouse and keyboard.

        ii.        Code the "Create an Account" link as native for mouse and keyboard and once activated, screen focus will be placed on the "Enter your e-mail" field in the create an account form.

        iii.        Indicate in "Terms and Conditions" and "Privacy Policy" link titles that they will open in a new window.

        iv.        Once signed into an account, add a heading level 1 designated the name of the account link.

c.    Browsing and Navigating Categories

        i.        If applicable, indicate in the social links that sharing a course using the social links opens in a new browser such as: "Facebook (opens in new window)".

        ii.        Code the "List" view link as native.

        iii.        Code the "Play Video" control link for both mouse and keyboard access.

        iv.        All player controls such as "play/pause" and video sliders will be keyboard accessible.

        v.        Add a text transcript of the video trailers.

    d.    Terms of Use and Privacy Policies

          i.    Indicate in "Terms and Conditions" and "Privacy Policy" link titles that the links open in a new window.

    e.    Sign Up for Exclusive Offers

          i.    Indicate in the "My Account" link title that the link opens a new window when signing up for exclusive e-mail offers.

Notwithstanding the foregoing, Defendant shall not be required to take actions which materially and negatively impact ease of use or functionality.

17.    **Web Accessibility Coordinator:** By December 31, 2018, Defendant shall designate an employee or third party as the Web Accessibility Coordinator who shall consult with the Web Accessibility Consultant as that term is defined in Paragraph 18. TC LLC may substitute another TC LLC's employee or third party as the Web Accessibility Coordinator at its sole discretion.

18.    **Web Accessibility Statement:** By December 31, 2018, Defendant shall:

    a.    Directly link from the Websites' homepage, a statement that indicates that Defendant is making Reasonable Efforts to increase the accessibility of the Websites so that persons with disabilities will have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Websites ("Accessibility Statement");

    b.    Accompany the Accessibility Statement with an accessible means of communicating accessibility questions and problems; and

    c.    Accompany the Accessibility Statement with an accessible means of communicating with customer service personnel in order to attain sought after information on the

goods and services offered on the Websites and/or to conduct business with the Websites such as, but not limited to making purchases of Defendant's goods and services that they are not able to do due to accessibility issues.

19.   **Web Accessibility Consultant:** By December 31, 2018, Defendant shall retain an independent consultant or employ a person of its own choosing, who has expertise concerning accessible website development and knowledge of the terms of this Consent Decree and WCAG 2.0 AA ("Web Accessibility Consultant")[1] in connection with implementing Defendant's Reasonable Efforts with respect to accessibility to the Websites described in this Consent Decree.

20.   **Website Usability:** Notwithstanding anything in this Consent Decree to the contrary, there will be no breach of this Consent Decree (i) on or before December 31, 2019, while the Defendant is developing and working towards the implementation of the Modifications set forth in Paragraph 16, and (ii) on or after January 1, 2020, if an Average Screen Reader User can perform the following tasks using the current version of a mainstream screen reading program (e.g. JAWS, Voiceover, NVDA):

    a.   Browse the courses offered on the Websites;

    b.   Purchase or subscribe on the Websites;

    c.   Complete the checkout process for purchasing or subscribing on the Websites;

    d.   Sign in to an account on the Websites;

    e.   Add items to the wish list on the Websites; and

    f.   Review the Accessibility Statement on the Websites.

### SPECIFIC RELIEF TO PLAINTIFF

---

[1] The Web Accessibility Consultant may be the same person as the Web Accessibility Coordinator.

21. **Specific Relief:** The Plaintiffs and the Defendant have agreed to settle all matters relating to costs, damages, attorneys' fees, experts' fees, or other financial matters relating to any alleged inaccessibility of the Website through a separate letter agreement (the "Letter Agreement") hereby incorporated by reference into this Consent Decree. The Letter Agreement shall be provided to the Court *in camera* for inspection and review if the Court so requires in order to extend its enforcement jurisdiction over the terms of the Letter Agreement.

## PROCEDURES IN THE EVENT OF DISPUTES

22. The procedures set forth in Paragraphs 23 through 27 must be exhausted in the event that (i) Plaintiffs allege that TC LLC has failed to meet its obligations pursuant to this Consent Decree or (ii) TC LLC alleges that there is an obligation set forth herein with which it cannot substantially comply. There will be no breach of this Consent Decree by TC LLC in connection with such allegations until the following procedures have been exhausted.

23. Plaintiffs will notify TC LLC in writing after the dates for compliance set forth herein if they believe that the Website is in any way not materially compliant with this Consent Decree. In response, TC LLC will notify Plaintiffs in writing if it believes there is criteria of this Consent Decree with which it cannot substantially or reasonably comply hereunder. All notifications must include reasonable detail and shall be made in the manner set forth in Paragraph 34.

24. Within thirty (30) days of either Party receiving notice as described in Paragraph 23, the other Party will respond in writing to the notice. Within fifteen (15) days of receipt of the response, the Parties will meet by telephone, or in person, in an attempt to informally resolve the issue.

9

25. If the issue remains unresolved within thirty (30) days of the meeting referenced in Paragraph 24, the Parties will each have an additional thirty (30) days to select an expert at their own expense and the two experts will mutually select an independent accessibility consultant (whose expense will be shared equally between the parties) with substantial experience in accessible website design who will evaluate whether the particular Modification was completed.

26. There will be no breach of this Consent Decree unless (a) the independent accessibility consultant determines that a Modification was not completed; and (b) TC LLC did not expend Reasonable Efforts to complete the Modification.

27. Should the Parties thereafter have a dispute regarding an issue raised in a notice given under Paragraph 23 after the procedures in Paragraphs 23 through 26 have been exhausted, the dispute shall be handled pursuant to the procedures set forth in Paragraphs 28 through 32 below.

28. If a party believes that the other party hereto has not complied in all material respects with any provision of the Consent Decree, that party shall provide the other party with notice of non-compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of the Consent Decree that is not being complied with in all material respects; (iii) a statement of the remedial action sought by the initiating party; and (iv) a reasonably detailed statement of the specific facts, circumstances and legal argument supporting the position of the initiating party.

29. Within forty-five (45) days of receipt of a notice pursuant to Paragraph 28, the non-initiating party shall respond to the initiating party in writing.

30. Within fourteen (14) days after the response described in Paragraph 29, the Parties shall informally meet and confer and attempt to resolve the issues raised in the Notice.

10

31.  If the matters raised in a notice provided pursuant to the above are not resolved within forty-five (45) days of the initial meeting and conference required by Paragraph 30, either party may submit the unresolved matters to nonbinding mediation before a mutually agreed upon mediator.

32.  If the dispute is not resolved in mediation, either party may move this Court for enforcement of compliance with this Agreement.

33.  Any of the time periods set forth in Paragraphs 24 through 32 may be extended by mutual agreement of the Parties.

34.  Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail and by overnight express mail or United States first class mail, addressed as follows:

To Plaintiffs:

Carlson Lynch Sweet Kilpela & Carpenter, P.A.
Attn: Benjamin Sweet
1133 Penn Avenue, 5th Floor
Pittsburgh, PA  15222
Email: bsweet@carlsonlynch.com

To TC LLC:

Greenberg Traurig, P.A.
Attn: Robert S. Fine
333 S.E. 2nd Avenue
Miami, FL  33131
Email: finer@gtlaw.com

With a copy to:

The Teaching Company Sales, LLC
Attn: General Counsel
4840 Westfields Blvd., Suite 500

Chantilly, VA 20151
Email: legal@teachco.com

## MODIFICATION

35. No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

36. The interpretation and enforcement of this Consent Decree shall be governed by the laws of the Commonwealth of Pennsylvania.

37. This Consent Decree contains the entire agreement of the Plaintiffs and the Defendant concerning the subject matter described in Paragraph 3, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in Paragraph 3, shall be enforceable.

38. If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

## PERSONS BOUND AND INTENDED THIRD-PARTY BENEFICIARIES

39. This Consent Decree shall be binding on: Defendant and its respective subsidiaries, agents, employees, and officers. In the event that the Defendant seeks to transfer or assign all or

part of its interest in any service covered by this Consent Decree, and the successor or assign intends on carrying on the same or similar use of the Websites, then the successor or assign shall be solely responsible for the obligations remaining under this Consent Decree for the duration of the remaining term of the Consent Decree.

40. The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of all persons with a Visual Impairment who utilize a screen reader to access the Websites, which visually-impaired persons shall constitute third-party beneficiaries to this Consent Decree. Such third-party beneficiaries shall be entitled to enforce the provisions of this Consent Decree against Defendant and enforce the dispute resolution provisions herein.

41. The Plaintiffs and the Defendant agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in Paragraph 3. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraph 3, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any party of any other obligations imposed by this Consent Decree.

42. The signatories represent that they have the authority to bind the respective parties, Tommy Brown, Lisa Gathers, and the Teaching Company Sales, LLC, to this Consent Decree.

## CONSENT DECREE HAS BEEN READ

43. This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

## RELEASE

44.     In exchange for the good and valuable consideration set forth herein, the sufficiency of which is hereby acknowledged by the Parties, Plaintiffs, their agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively, the "Releasing Parties") hereby release, acquit, satisfy, and discharge Defendant, along with any and all of its predecessors, agents, representatives, employees, partners, successors, assigns, officers, directors, shareholders, members, subsidiaries, parents, affiliated entities, vendors, and any entity or person related to them, jointly and severally (hereinafter, the "Released Parties") from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action, in law or equity, or suits of any kind, whether known or unknown that the Releasing Parties have, may have, may have had, or may hereafter raise against the Released Parties with respect to the Website and this subject litigation arising under Title III of the ADA, the Pennsylvania Human Relations Act, the Massachusetts Public Accommodations Law, Massachusetts General Laws Chapter 93A or any other disability-related law, ordinance, or local rule, with respect to the time period running from the beginning of the world through the date of this Agreement, including, but not limited to, all claims by the Releasing Parties for attorney's fees and costs, expert fees, litigation expenses, damages, or any other amount, fee, and/or cost, if any, with the exception of attorneys' fees, costs, and damages required to be paid by Defendant pursuant to the Letter Agreement.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Agreed and Consented to:

*[signature]*

Tom Brown, Individually


_____

Lisa Gathers, Individually


The Teaching Company Sales, LLC

By *[signature: Paul M_____]*

Its  VP & General Counsel

15

Agreed and Consented to:

_____
Tom Brown, Individually

*Lisa Gathers*
Lisa Gathers, Individually

The Teaching Company Sales, LLC

By *Paul M Sklolah*

Its *VP + General Counsel*

15

## COURT APPROVAL, ADOPTION, AND ENTRY OF THE CONSENT DECREE

**THE COURT, HAVING CONSIDERED** the pleadings, law, underlying facts and having reviewed this proposed Consent Decree,

**FINDS AS FOLLOWS:**

1) This Court has personal jurisdiction over Plaintiffs and Defendant for the purposes of this lawsuit pursuant to 28 U.S.C. §§ 1331;

2) The provisions of this Consent Decree shall be binding upon the Parties;

3) Entry of this Consent Decree is in the public interest;

4) This Consent Decree is for settlement purposes only and does not constitute an admission by Defendant of any of the allegations contained in the Complaint or any other pleading in this lawsuit, nor does it constitute any finding of liability against Defendant;

5) The Plaintiffs are acting as a private attorney general in bringing this lawsuit and enforcing the ADA; and

6) This Consent Decree shall be deemed as adjudicating, once and for all, the merits of each and every claim, matter, and issue that was alleged, or could have been alleged by Plaintiffs based on, or arising out of, or in connection with, the allegations in the Complaint.

**NOW THEREFORE,** the Court approves the Consent Decree and in doing so specifically adopts it and makes it an Order of the Court.

**DONE AND ORDERED** in Chambers this 3rd day of Dec., 2018.

*Arthur J. Schwab*
UNITED STATES DISTRICT
JUDGE ARTHUR J. SCHWAB

cc: Counsel of record via CM/ECF

16